**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**

_____

Case No. 23-CV-61382-SINGHAL

_____

JOHN H. OWOC and MEGAN E. OWOC

Appellants,

vs.

BLAST ASSET ACQUISITION, LLC

Appellee.

_____

ON APPEAL FROM THE UNITED STATES BANKRUPTCY COURT

FOR THE SOUTHERN DISTRICT OF FLORIDA

LOWER TRIBUNAL ADV. CASE NO. 23-01051-PDR-A

_____

# APPELLEE'S REPLY IN SUPPORT OF ITS MOTION TO STRIKE APPELLANTS' ADDITIONAL EVIDENCE

| | |
|---|---|
| **HUESTON HENNIGAN LLP** | **AKERMAN LLP** |
| Allison L Libeu (pro hac vice) | Michael I. Goldberg |
| Yegor Fursevich (pro hac vice) | Florida Bar No. 886602 |
| 523 W. 6th St. Unit 400 | Eyal Berger |
| Los Angeles, CA 90014 | Florida Bar No. 11069 |
| Tel.: (213) 788-4340 | 201 East Las Olas Boulevard, Suite 1800 |
| Fax: (888) 775-0898 | Fort Lauderdale, FL 33301 |
| alibeu@hueston.com | T: (954) 463-2700 /F: (954) 463-2224 |
| yfursevich@hueston.com | michael.goldberg@akerman.com |
| | eyal.berger@akerman.com |
| *Counsel for Appellee* | |
| | *Counsel for Appellee* |

The Eleventh Circuit has emphasized that "[i]n reviewing bankruptcy court judgments," "[t]he district court may not make any independent factual findings" or consider "evidence that was [not] part of the record before [the bankruptcy court]." *In re JLJ, Inc.*, 988 F.2d 1112, 1116 (11th Cir. 1993); *Selman v. Cobb Cnty. Sch. Dist.*, 449 F.3d 1320, 1332 (11th Cir. 2006). Yet, that is precisely what Appellants ask of this Court. In their Opposition to Appellee's Motion to Strike (the "Opposition"), Appellants request that this Court admit into the record two news articles, the terms of service of four social media platforms, and deposition testimony from another lawsuit, none of which was before the Bankruptcy Court.[1] The Court should reject Appellants' improper attempts to augment the appellate record at this late juncture.

**I.   News Articles Are Not Proper Subjects of Judicial Notice**

As Appellee explained in its Motion to Strike (the "Motion"), courts routinely hold that news articles such as those that Appellants submit for the first time on appeal "are not the proper subject of judicial notice." *Gaza v. LTD Financial Servs., L.P.*, 2015 WL 5009741, at *2 (M.D. Fla. Aug. 24, 2015). Appellants offer two arguments in response, but neither has any merit.

*First*, Appellants assert that they are seeking judicial notice of the articles solely "to show that certain things were said in the press" and not for the truth of the facts contained in those articles. (ECF 45 at 5.) This is untrue. As the Opposition explains, Appellants are asking the Court to treat certain assertions in the articles as established fact. Specifically, Appellants ask the Court to conclude, based on assertions in the articles, that (i) Jack Owoc has a "distinctive persona"; (ii) certain people in "the energy drink market" view Mr. Owoc as having such a persona; and (ii) this persona is "inextricably wedded to the BANG Energy drink product." (*Id.* at

---

[1] Appellants cite *Ellison v. Postmaster Gen., United States Postal Serv.*, 2022 WL 4726121, at *5 (11th Cir. Oct. 3, 2022) for the proposition that an appellate court "review[s] a district court's decision to take judicial notice of a fact for abuse of discretion." (ECF 45 at 3.) This is irrelevant here because the Bankruptcy Court did not take judicial notice of the materials at issue.

3-4.) These supposed "facts" cannot be "judicially noticed" from news articles that Appellants self-selected and submitted to this Court for the first time on appeal. *See, e.g.*, *Kaminski v. BP Expl. & Prod. Inc.*, 2012 WL 4792635, at *6 (M.D. Fla. Oct. 9, 2012) (declining to take judicial notice of new articles).

The cases Appellants cite demonstrate why it is improper to judicially notice the articles at issue. In those cases, the courts took judicial notice of the existence of press coverage on a given topic because the fact of coverage was, in and of itself, relevant to the courts' analysis. *See, e.g.*, *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008) (taking judicial notice of media reports to determine "whether so-called 'storm warnings' were adequate to trigger inquiry notice"); *Ieradi v. Lylan Laboratories, Inc.*, 230 F.3d 594, 598 n.2 & 599 (3d Cir. 2000) (taking judicial of news article reporting on defendant's settlement with the FTC); *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 960 (9th Cir. 2010) (taking judicial of news articles, magazines, and books to "indicate what was in the public realm" about a pair of oil paintings). The courts expressly declined to "take judicial notice of the documents for the truth of the matters asserted in them." *Staehr*, 547 F.3d at 424; *see also Von Saher*, 592 F.3d at 960 (declining to take judicial notice of "whether the contents of those articles were in fact true").[2] Here, Appellants seek to treat the content of the news articles as true to support their arguments on appeal. Courts uniformly hold that news articles may not be judicially noticed for this purpose. (ECF 41 at 2 (citing cases).)

*Second*, Appellants argue that the articles contain "legislative facts" that the Court may accept as true. (ECF 45 at 5-8.) This argument misapprehends the nature of legislative facts.

---

[2] Appellants' reliance on *Kramer v. Time Warner, Inc.*, 937 F.2d 767 (2d Cir. 1991) is similarly misplaced. Although the district court made a brief reference to the junk bond market, "[t]he illustrative reference to the condition of the junk bond market was thus not a ground for decision." *Id.* at 773.

"[L]egislative facts are established truths, facts or pronouncements that do not change from case to case but apply universally." *Robinson v. Liberty Mut. Ins. Co.*, 958 F.3d 1137, 1142 (11th Cir. 2020) (explaining that an example of a legislative fact is a dictionary definition). Legislative facts are distinct from "adjudicative facts," which are "simply the facts of the particular case." *Couch v. Broward Cnty.*, 2012 WL 2007148, at *1 n.1 (S.D. Fla. June 5, 2012). The statements in the news articles at issue—puff pieces about Mr. Owoc and Bang Energy—are anything but universally accepted, established truths. Although Appellants assert that the articles describe "the *modus operandi* of Market Makers" (ECF 45 at 7-8), neither article even contains the phrase "Market Maker," which is a term that Appellants invented for the first time on this appeal.

Appellants' cited cases further demonstrate that the news articles at issue do not constitute judicially noticeable legislative facts. Indeed, Appellants' cases simply cite case law and academic materials for propositions that are widely accepted. *See, e.g.*, *People v. Collins*, 438 P.2d 33 (Ca. 1968) (citing scholarly books and articles on statistics); *Javins v. First Nat. Realty Corp.*, 428 F.2d 1071, 1079 (D.C. Cir. 1970) (citing scholarly articles on housing issues); *Campbell v. Carpenter*, 566 P.2d 893, 895 (Or. 1977) (citing New Jersey Supreme Court case). None of Appellants' cases support their remarkable assertion that a court may treat news articles about a party to a particular lawsuit as universally accepted truths.

## II.     Social Media Terms of Service Are Not Proper Subjects of Judicial Notice

Appellants seek to introduce the terms of service of social media platforms in connection with their argument that the CEO Accounts[3] are governed by "rejected" executory contracts. (ECF 39 at 14-17.) As Appellee demonstrated in its Answer Brief, Appellants waived this argument by not raising it before the Bankruptcy Court. (ECF 40 at 14.) Accordingly, because Appellants seek

---

[3] All terms not defined herein have the same meaning as provided in Appellee's Answer Brief. (ECF 40.)

to use the terms of service to support an argument improperly raised for the first time on appeal, the Court should not judicially notice those terms for that reason alone. *See Burns v. Town of Palm Beach*, 999 F.3d 1317, 1333 (11th Cir. 2021) ("[T]he limited power of an appellate court . . . does not extend to creating summary judgment evidence for our preferred litigant and then using the newly created evidence to find facts in his favor.").

Taking judicial notice of the terms of service would be additionally improper because they are not the actual agreements entered into in connection with the opening of the CEO Accounts. As Appellants admit, "Mr. Owoc was unable to offer into evidence the original Terms or contracts with Instagram, TikTok, and Twitter." (ECF 39 at 15 n.11.) While Appellants ask the Court to "infer" that the original agreements reflect that *Mr. Owoc* entered into a "contractual relationship" with the social media platforms, this inference is both baseless and not properly subject to judicial notice. *See, e.g.*, *Lodge v. Kondaur Capital Corp.*, 750 F.3d 1263, 1274 (11th Cir. 2014) (declining to take notice of facts that were not "'generally known within the trial court's territorial jurisdiction' and could not be 'accurately and readily determined from sources whose accuracy cannot reasonably be questioned'") (quoting Fed. R. Evid. 201(b)).

Appellants' cited cases do not support their argument that the Court may judicially notice the terms of service at issue here. All of Appellants' cases were in the context of motions to dismiss in which courts may consider documents where "the complaint necessarily relies upon a document or the contents of the document are alleged in a complaint . . . ." *Lewis v. Google LLC*, 461 F.Supp.3d 938, 947 n.1 (taking judicial notice of document that plaintiff attached "to his original complaint"); *Piper v. Talbots, Inc.*, 507 F. Supp. 3d 339, 341 (D. Mass. 2020) (taking judicial notice of documents "plaintiffs attach[ed] to the FAC"); *New Mexico ex rel. Balderas v. Google, LLC*, 489 F. Supp. 3d 1254, 1258 (D.N.M. 2020) (taking judicial notice of documents

"central to the complaint"); *Trudeau v. Google LLC*, 349 F. Supp. 3d 869, 876 (N.D. Cal. 2018) (taking judicial notice of documents "incorporated by reference into the Complaint"), *aff'd*, 816 Fed. Appx. 68 (9th Cir. 2020); *Garcia v. Enter. Holdings, Inc.*, 78 F. Supp. 3d 1125, 1136 (N.D. Cal. 2015) (taking judicial notice of documents "Plaintiff's claim necessarily depends on"). This rule does not apply to this case, which is on appeal from a grant of summary judgment.

### III. Testimony from Another Lawsuit Is Not a Proper Subject of Judicial Notice

As demonstrated in Appellee's Motion, it is well established that Appellants may not introduce deposition testimony from another litigation for the first time on appeal. (ECF 41 at 3-4 (citing cases).) Without citing any authority in support, Appellants nonetheless contend that this Court should consider the new testimony to "avoid a miscarriage of justice." (ECF 45 at 10.) But if Appellants genuinely believed that the testimony was important to this case, then they were required to introduce it in the Bankruptcy Court. Because this Court may "consider only evidence that was part of the record before the [Bankruptcy] [C]ourt," *Selman*, 449 F.3d at 1332, it should not consider new evidence that Appellants introduce for the first time on appeal.

Appellants also request, in the alternative, to supplement the record with the additional deposition testimony pursuant to Federal Rule of Appellate Procedure 10(e). (ECF 45 at 10-11, n.6.) Rule 10(e) provides that "[i]f anything material to either party is omitted from or misstated in the record by error or accident, the omission or misstatement may be corrected and a supplemental record may be certified." Fed. R. App. P. 10(e).

By its express terms Rule 10(e) applies only to information that is omitted from the record by "error or accident." *See ACLU of Florida Inc. v. Dixie Cnty. Fla.*, 828 F. Supp. 2d 1307, 1308 (N.D. Fla. 2011) (explaining that Rule 10(e) is for "correcting some [accidental] misstatement or omission in the record" and does not "authorize the Court to supplement the record for appeal with

- 5 -

material that was not considered by the district court"); *see also Russell v. United States*, 845 F. App'x 818, 820 (11th Cir. 2021) (explaining that "we will rarely supplement the record to include material that was not before the district court"), *cert. denied*, 142 S. Ct. 1149 (2022).[4] Appellants do not even attempt to show that the testimony at issue meets this standard. (*See* ECF 45 at 10.) Nor can they because the testimony was never before the Bankruptcy Court. *See ACLU of Florida Inc.*, 828 F. Supp. 2d at 1308 (refusing to supplement the record on appeal, noting that "Dixie County had a full and fair opportunity during the briefing of the summary judgment motions to designate and submit any deposition testimony that it deemed necessary to support its position or upon which it wanted to rely").

Instead of addressing Rule 10(e), Appellants argue that the Court should consider new evidence because Appellants disagree with the Bankruptcy Court's rulings. (*Id.* at 9-10.) But nothing in the law permits Appellants to augment the appellate record with new evidence they unilaterally deem to undermine the Bankruptcy Court's findings. Indeed, the Eleventh Circuit has emphasized that the law is to the contrary. *See Burns*, 999 F.3d at 1333 (explaining that "the limited power of an appellate court" does not include the power to consider "new summary judgment evidence").

Regardless, the testimony Appellants belatedly seek to introduce supports the Bankruptcy Court's summary judgment ruling. When faced with the question, "With regard to Vital-created social media posts that are posted to your account[s], . . . do you have to approve those videos

---

[4] Appellants' cited cases are in accord, as those courts supplemented the record pursuant to Rule 10(e) with evidence that was considered by the trial court but which was not included in the record by some ministerial mistake. *See United States v. Coleman*, 767 F. App'x 881, 885 (11th Cir. 2019) (considering evidence that the "the parties and the district court relied on" but that erroneously "was omitted from the district court's record"); *Ross v. Kemp*, 785 F.2d 1467, 1472 (11th Cir. 1986) (same, where both parties relied on the evidence, noting that "it is appropriate to supplement the record with a deposition upon which parties relied even though for some unexplained reason it was not filed below").

before they are posted to your account?," Mr. Owoc answered, "No, I don't have to." (ECF 39-2 at 21.) This testimony provides additional support for the Bankruptcy Court's finding that Vital Pharmaceuticals, Inc. employees had access to and posted content on the CEO Accounts. (ECF 16-3 at 21.) Accordingly, even if the Court were to consider the new deposition testimony (which the Court should not), it further buttresses the Bankruptcy Court's summary judgment ruling.

## IV. Conclusion

For all these and other reasons described in Appellee's Motion, Appellee respectfully requests that the Court strike all evidence that Appellants seek to introduce for the first time on appeal.

Dated: February 20, 2024

By: /s/ Allison L. Libeu
Allison L. Libeu (pro hac vice)
**HUESTON HENNIGAN LLP**
523 W. 6th St. Unit 400
Los Angeles, CA 90014
Tel.: (213) 788-4340
Fax: (888) 775-0898
alibeu@hueston.com

/s/ Michael I. Goldberg
**AKERMAN LLP**
Michael I. Goldberg
Florida Bar No. 886602
Eyal Berger
Florida Bar No. 11069
201 East Las Olas Boulevard, Suite 1800
Fort Lauderdale, FL 33301
T: (954) 463-2700 /F: (954) 463-2224
michael.goldberg@akerman.com
eyal.berger@akerman.com

*Counsel for Appellee*

## CERTIFICATE OF COMPLIANCE

This motion complies with Federal Rules of Bankruptcy Procedure 8013 & 8015(h) and Federal Rule of Appellate Procedure 27 in that it contains 2,273 words.

Dated: February 20, 2024

              By: */s/ Michael I. Goldberg*
                 Michael I. Goldberg
                 Florida Bar No. 886602
                 201 East Las Olas Boulevard, Suite 1800
                 Fort Lauderdale, FL 33301
                 T: (954) 463-2700 /F: (954) 463-2224
                 michael.goldberg@akerman.com

                 *Counsel for Appellee*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the forgoing was served via CM/ECF Notice of Electronic Filings to all parties registered to receive electronic noticing in this case on February 20, 2024.

              By: */s/ Michael I. Goldberg*

- 8 -